CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

March 31, 2025
LAURA A. AUSTIN, CLERK
BY:
     s/A. Beeson
        DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

|  |  |  |
|---|---|---|
| **TREVOR ANDREW JONES,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:23CV00277 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **BARBARA FROST, ET AL.,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendants. | ) | |
| | ) | |

*Trevor Andrew Jones, Pro Se Plaintiff; Christopher F. Quirk, BYRNE CANAAN LAW, Richmond, Virginia, for Defendants Frost, Berry, and Sclafani; Brittany E. Shipley and Rosalie P. Fessier, TIMBERLAKE SMITH, Staunton, Virginia, for Defendants Bland, Starkey, Ohai, Stanford, and Jamerson; and Ann Marie C. White Rene, Office of the Attorney General, Criminal Justice & Public Safety Division, Richmond, Virginia, for Defendants Amonette, Bryant, Clarke, Dillman, Edmonds, Elam, Harvey, Herrick, Hudson, Johnson, Justice, Meinhard, Moe-Willis, Eva Moore, William Moore, Mulder, Ponton, Reed, Robinson, Snoddy, Tucker, Woodson Virginia Department of Corrections, and the Commonwealth of Virginia.*

The plaintiff, an unrepresented Virginia inmate, filed this civil rights case under 42 U.S.C. § 1983 against more than thirty prison officials, the Commonwealth of Virginia, and the Virginia Department of Corrections (VDOC). Jones complains about prison food service conditions and denial of adequate medical care related to an incident when he experienced salmonella poisoning in August 2021 and allegedly developed fatty liver disease (FLD). The plaintiff has responded to motions to dismiss by all defendants making these motions ripe for disposition. After review

of the record, I conclude that the defendants' motions must be granted and that claims against other defendants must be summarily dismissed.

I. BACKGROUND.

Jones filed this lawsuit in May 2023. The defendants filed Motions to Dismiss, arguing that Jones' pleading was factually deficient and relied largely on conclusory statements and facts contained in exhibits and not in the Complaint. Jones then filed an Amended Complaint, ECF No. 63, in January 2024.[1] This Amended Complaint spans 93 pages and attempts to incorporate his prior deficient Complaint. The court allowed incorporation of the exhibits to the Complaint, which are now included with the Amended Complaint. Like its predecessor, this pleading references attached exhibits without stating in the Amended Complaint itself the pertinent facts from the exhibit, which leaves the court and the defendants to sort through the dozens of exhibit documents and then guess at what facts from those documents Jones believes are relevant.[2] Liberally construed, Jones' Amended Complaint raises the following claims:

---

[1] I thereafter dismissed without prejudice the defendants' motions addressing Jones' initial Complaint.

[2] Jones is advised that his habitual behavior in this case of relying on documents to provide facts not presented in the complaint itself is contrary to the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8 (requiring complaint to make "a short and plain statement of the claim *showing that the pleader is entitled to relief*") (emphasis added); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(requiring complaint to have sufficient "factual content" to support "the reasonable inference that the defendant is liable for the misconduct alleged").

1.      These defendants failed to provide timely and adequate medical treatment when Jones suffered salmonella poisoning in August 2021: Michael Johnson, Samantha Reed, Lisa Justice, Barbara Frost, Marcus Berry, Paul C. Ohai, Rose Durbin,[3] Christine A. Bryant, John Woodson, Jeffrey Snoddy, D. Bland, A. Starkey, Eva Moore, Larry T. Edmonds, NP Sclafani, Stanton, A. Jamerson, Steve Herrick, Mark Amonette, Jeffrey Dillman, Marcus Elam, Adrian Tucker, S. Teresa Harvey, A. David Robinson, Paul C. Ohai, and VDOC.

2.      These defendants ordered and/or served food products known to fail health standards, and contaminated food caused Jones to suffer salmonella poisoning, or these defendants knowingly allowed such actions: William Moore, Arlene Mulder, Christine Bryant, Woodson, Snoddy, Robinson, Harold Clarke, Stacy Meinhard, Dillman, Elam, Tucker, Ohai, VDOC, and Commonwealth,

3.      These defendants failed to provide or ensure Jones received appropriate medical care for complaints of abdominal pain and FLD, for which Jones claims he has been denied treatment: Commonwealth, VDOC, Ohai, Bland, Starkey, Frost, Berry, Karen Lee Sclafani, Jamerson, M. Stanford, Meinhard, Bryant, L. Edmonds, E. Moore, Dillman, Tucker, Herrick, Amonette, Robinson, Deborah Hudson, Alika Brown, Harvey, Sequoya Moe-Willis, Harold C. Clarke, and Elam.

4.      These defendants violated Jones' rights through their policies, procedures, and customs regarding food service and medical care: Clarke, Robinson, Amonette, Herrick, Elam, Tucker, Henry Ponton, Harvey, Dillman, Moe-Willis, Hudson, Meinhard, Bryant, Edmonds, E. Moore, Woodson, Snoddy, Mulder, and W. Moore.

---

[3] In the Amended Complaint, Jones refers to defendant Durbin as Drubbin.

Jones also asserts claims under state law based on the defendants' actions or omissions. I liberally construe Jones' submissions as alleging the following sequence of events in support of his claims.[4]

Jones' claims arose during his incarceration at Buckingham Correctional Center (BKCC), a prison facility operated by the VDOC. At an unspecified time, after consuming his lunch meal on August 20, 2021, Jones developed symptoms later identified as the effects of exposure to salmonella. For more than two weeks thereafter, Jones allegedly suffered nausea, vomiting, diarrhea, sometimes blood in his stool, abdominal pain, and weight loss, along with other, more serious long-term effects that he believes are linked to the salmonella episode.

At around 7:00 a.m. on August 23, 2021, after Jones had allegedly been "violently-ill [sic] for approximately 65 hours," Am. Compl. 11, ECF No. 63,[5] he asked for an Emergency Grievance Form from booth officer Lisa Justice, but she did not have a form available. So, Jones walked into the medical department and asked to be seen. Jones claims that he was "visibly ill from three-days of nausea, vomiting,

---

[4] Jones' Amended Complaint is rife with conclusory allegations about what the defendants knew or should have known and what supervisory officials should have done to prevent the harm Jones allegedly suffered. Conclusory pronouncements, absent factual support, need not be construed or considered as facts. *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023). Therefore, I do not include any such factually barren assertions as part of my summary of the factual allegations offered to support Jones' claims.

[5] Page numbers referenced in this Opinion to documents on the record indicate the page numbers assigned by the court's electronic docketing system.

and diarrhea." *Id*.  Correctional Officer Samantha Reed told him that he would need to file a sick call request to receive a medical assessment.[6]  Reed called Officer Michael Johnson, who gave Jones paperwork to fill out to request a medical appointment and escorted him back to his housing area.  At 7:35 a.m., Jones completed an Emergency Grievance describing his symptoms and delivered it to booth officer Justice.  Instead of calling the medical unit immediately, Justice allegedly waited three hours for another officer to retrieve the document and take it to the medical staff for processing.  Jones alleges that this document has disappeared.

At some time on August 23, 2021, Nurse Practitioner (NP) Barbara Frost saw Jones in the medical unit.  Jones claims that this assessment occurred only because his mother had called VDOC administrator Rose Durbin, who called BKCC and asked medical staff to assess Jones.  NP Frost allegedly diagnosed Jones with possible dehydration and stated that liver or kidney disorders might be causing his symptoms, but did not touch him or order diagnostic testing.  Jones also alleges that defendants Chief Medical Department Administrator and Medical Authority D. Bland, RN, and Head Nurse A. Starkey were present that day and were close enough to hear his medical complaints, but they took no steps to ensure that he received proper treatment.  Jones complains that his medical records reflected his chronic care

---

[6] Jones claims that by August 23, 2021, at least four other inmates with similar symptoms had been processed through the medical unit, allegedly putting Reed on notice that Jones' symptoms constituted an "excessive risk to Jones' health."  *Id.* at 14.

status for unspecified disorders and that these maladies should have triggered an aggressive treatment response from NP Frost and the administrative nurses.

Jones alleges that on August 25, 2021, after his mother called Durbin again, NP Marcus Berry examined Jones. By this time, according to Jones, seventeen inmates had reported "obvious signs of food poisoning," four of whom had to be transported to a local hospital.[7] *Id.* at 22, 30. NP Berry allegedly never touched Jones or performed physical exams described in medical notes. Berry wrote that Jones should have blood labs and stool testing for salmonella exposure or other intestinal issues. Jones alleges that these tests were neither ordered nor performed and that NP Berry offered no other treatment and did not ensure that testing he ordered was carried out.[8]

NP Frost examined Jones on August 26, 2021. Jones claims this additional exam was a response to another call from his mother to Durbin. Jones claims that he told NP Frost "he still had to use the bathroom a lot; his stomach hurt; he did not feel right"; and he reported seeing blood in his stool. *Id.* at 21. NP Frost diagnosed the blood as likely coming from a hemorrhoid and noted that Jones' diarrhea had

---

[7] Jones offers only anecdotal and conclusory allegations about the number of inmates affected by salmonella at BKCC during this incident.

[8] Jones' Exhibit 3 at 3, ECF No. 63-2 shows Berry's notes from the exam on August 23, 2021, which include an order for stool testing regarding possible salmonella exposure. Berry also noted that Jones should eat a soft diet and increase fluids.

resolved, which Jones claims was not true. NP Frost also recorded that she performed a physical exam on Jones' abdomen that he denies occurred. Jones complains that NP Frost did not check on testing that NP Berry had said he would order but offers no factual basis for this assertion.

Jones alleges that he was not diagnosed and provided with "adequate medication" for salmonella exposure until September 9, 2021.[9] *Id.* at 10. He asserts, without supporting facts, that the medical defendants knew food poisoning could result in "liver and kidney damage <u>and organ failure</u>." *Id.* at 24 (underscoring in original). Jones claims that he has "Level 4 kidney failure directly due to defendants not giving him proper medical care for his food poisoning" in August and September 2021. *Id.* at 26. He faults numerous other defendants for failing to supervise or respond to Jones' grievances or verbal complaints by ensuring that he received medical care.

Jones asserts that "[d]efendants were notified multiple times from September 9, 2021 and February 16, 2022 through March of 2023" that he was experiencing

---

[9] Jones' Exhibit 5 indicates that on September 2, 2021, NP Frost examined him, ordered stool testing, and prescribed Imodium and Pepto Bismol. Jones claims that he never received the medications, but he admits that stool testing was done. Exhibit 6 is a copy of medical notes from the NP's exam on September 9, 2021, to review the stool test results, which showed salmonella exposure. The NP prescribed an antibiotic.

"deep inner intestinal pain that was acute, chronic, and getting worse."[10]  *Id.* at 41.
At the September 9, 2021, visit with NP Berry, Jones mentioned his abdominal pain,
along with continuing diarrhea.  As stated, NP Berry prescribed an antibiotic.  Jones
faults the NP for failing to order additional diagnostic testing of Jones' liver and
kidneys.

In February 2022, Jones allegedly began complaining of near constant
abdominal pain.  In February, August, October, and December 2022, A. Brown,
CNA, allegedly responded to multiple requests from Jones for medical care, saying
that he would be scheduled.  Jones apparently wants to hold her liable for not
expediting his access to care because of his complaints of constant pain.

Jones alleges that after he underwent an ultrasound, on June 16, 2022, he was
diagnosed with FLD, i*d.* at 74, although tests in years past had shown he had healthy
liver function.  He alleges that for months after the FLD diagnosis, none of the
defendants informed him about it.

NP Sclafani began seeing Jones for complaints of left abdominal pain on
August 12, 2022, noting Jones' report that the pain dated from February 2022 or
from the salmonella incident in August 2021.  NP Sclafani ordered Motrin, 400 mg.,
and abdominal X rays.  But the X ray results were allegedly lost, and Jones

---

[10]  I have omitted internal quotation marks, alterations, and/or citations here and
throughout this Opinion and Order, unless otherwise noted.

complains that NP Sclafani did not do a timely follow up exam. He contends that the NP should have ordered "immediate CT scans to properly diagnose the gravamen of the injury." *Id.* at 47–48.

Nurse Jamerson responded on October 21, 2022, to an Emergency Grievance that Jones filed, complaining of abdominal pain that was worse since salmonella poisoning the previous year. Jamerson responded that she saw no emergency and advised him to file a sick call request. Jones asserts that many administrative defendants were also aware of this Emergency Grievance, according to the VDOC grievance procedures, although he does not state that any of them had personal involvement in receiving or addressing this filing.

Stanford responded to Jones' Written Complaint, filed October 21, 2022, complaining of acute pain in his abdomen and asking for diagnostic testing. Stanford's response indicated that she had scheduled Jones for sick call the following week, but he claims that he was not seen that week. In November 2022, Stanford responded to Jones' request for medical care that she would ask to have him seen. He alleges that he was not seen. Later that month, Jones allegedly filed requests to administrators, asking for medical appointments, without success. One grievance response indicated that Jones had missed two scheduled medical appointments, but he claims that he was at work and did not get notice of any appointments. Jones contends that he notified the warden, the assistant warden, and other VDOC

administrators that the BKCC medical unit routinely did not order diagnostic testing

or medical care for his complaints of continual abdominal pain.

Jones filed grievance documents complaining of abdominal pain on October

24, November 14, 21, and 28, 2022, and needing treatment and about not being

notified of appointments scheduled while he was at work.  On December 4, 2022,

Jones filed an Emergency Grievance about his abdominal pain and again on

December 7, 2022.  A grievance response to Jones on December 8, 2022, again

mentioned two scheduled medical appointments for which Jones did not show up,

on October 20 and November 1, 2022.  Jones faults "the assigned Medical dep't.

Officer" for failing to notify him properly of the appointments under VDOC

regulations.  *Id.* at 62–63.  He blames defendants who addressed Emergency

Grievances, other grievances, or appeals in 2023 for failing to ensure him access to

diagnostic medical care.

NP Sclafani examined Jones on December 19, 2022, diagnosed him with

GERD (gastroesophageal reflux disease), and ordered the medication Prilosec.[11]  On

---

[11]   Jones claims that his medical expert (apparently referring to his sister, April
Rasmussen, who is a registered nurse) will say that this diagnosis and treatment were
ridiculous, based on Jones' complaints of pain from February to December 2022.  The only
document in the record from this purported expert is an unverified letter, stating: "I feel
[effects of salmonella exposure on Jones] led to liver damage that could have been avoided
had it been caught in a timely manner and treated" in unspecified ways.  App'x 5, at 85,
ECF No. 63.  Nothing in the record suggests that Rasmussen has evidence to offer on
whether Jones' salmonella exposure and its effects likely caused his development of FLD
and kidney issues.

February 27, 2023, Jones requested medical care and complained that NP Sclafani had not followed up to see if the medication she had prescribed had relieved his abdominal pain. He claims that nothing happened with this request until June 2023, and that he did not see a provider again until August 31, 2023. In the meantime, he allegedly worried about possible causes of the pain, such as cancer, worms, or a bowl perforation.

Jones asserts that "due to not being treated for 19-days [sic], the salmonella poisoning caused and/or had a proximate causal effect on Jones' Liver which resulted in [his] having FLD." *Id.* at 72. Jones attempts to place blame on these defendants: Starkey, Bland, NP Frost, NP Sclafani, and Dr. Ohai, who allegedly all "withheld the June report of FLD until 12/19/2022." *Id.* at 75. On that date, NP Sclafani allegedly stated that VDOC does not offer any treatment for FLD and recommended that Jones eat more chicken and fish and less white or processed carbohydrates, a diet Jones claims is not available to VDOC inmates without a medical order. He does not allege that he asked medical staff to order such a diet for him, however. Jones asserts that the defendants named in this claim denied him proper medical diagnosis and treatment for FLD and that there is an "irrefutable causal connection between" delays in diagnosis and treatment and his current FLD. *Id.* at 73. He also contends that the defendants have chosen to "deny known medical treatment options" for FLD, although he does not specify what such treatment

options are.  *Id.* at 75.  Jones sues other administrative defendants for knowing of his complaints and failing to ensure that he received treatment for FLD and/or abdominal pain.

## II. DISCUSSION.

### A.  Standard of Review.

"A Rule 12(b)(6) motion to dismiss tests only the sufficiency of a complaint." *Mays ex rel. Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021).  In considering a Rule 12(b)(6) motion, "[t]he district court must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." Langford, 62 F.4th at 124.  "[C]ourts are obligated to liberally construe pro se complaints, however inartfully pleaded."  *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 540 (4th Cir. 2017).  A complaint must plead facts sufficient to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facially plausible claim includes factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "[A] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.*  "[T]he court need not accept legal conclusions, threadbare

recitals of the elements of a cause of action, or conclusory statements." *Langford* 62 F.4th at 124.

### B.  Initial Matters.

Jones cannot prevail on his § 1983 claims against two defendants he has named in the Amended Complaint: the Commonwealth and the VDOC.  Neither the state nor the individual state actors, sued in their official capacities, is considered a "person" subject to suit under § 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  As the VDOC is properly considered an arm of the state, it is also not subject to suit under § 1983.  Therefore, I will grant the Motion to Dismiss as to the Commonwealth and the VDOC on all § 1983 claims.

Three of the defendants, NP Frost, NP Berry, and NP Sclafani, have waived the right to file answers pursuant to 42 U.S.C. 1997e(g).  These defendants have not filed dispositive motions.  Nevertheless, I conclude for reasons to be discussed that all § 1983 claims against these defendants must be summarily dismissed, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim upon which relief may be granted.  Another defendant, A. Brown, is not represented and has not responded to the Amended Complaint.  However, I find that the § 1983 claims against her must also be summarily dismissed under 28 U.S.C. § 1915A(b)(1), which requires the court to dismiss any plaintiff's complaint about prison conditions for failure to state a claim.

Again, for reasons to be discussed, I find that Jones has failed to state any § 1983 claim against any defendant. Consequently, I must also dismiss any supplemental claims he attempts to assert under state law. First, § 1983 was intended to protect only federal rights guaranteed by federal law and not to vindicate tort claims for which there are adequate remedies under state law. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). Jones' state law claims are thus not independently actionable under § 1983. Second, although Jones mentions the Virginia Tort Claims Act as a legal ground on which to rest his state law claims in this case, this argument lacks merit. "Virginia's state courts have exclusive jurisdiction to hear VTCA claims. Va. Code [Ann.] § 8.01-195.4. Furthermore, the plain language of the VTCA allows negligence claims to be maintained only against the Commonwealth," with no provision allowing suit against individual state officials or the VDOC. *Chamberlain v. Mathena*, No. 7:19-CV-00879, 2021 WL 789858, at *5 (W.D. Va. Mar. 1, 2021). Third, Jones appears to complain that various defendants violated state policies or job responsibilities through their actions or omissions. However, a state official's failure to abide by a state law of any kind cannot support a claim that his or her actions deprived the plaintiff of federal rights as required to state a claim actionable under § 1983. *Riccio v. Cnty. of Fairfax,* 907 F.2d 1459, 1469 (4th Cir. 1990).

Finally, to the extent that any other state law claims remain unaddressed in the preceding paragraph, I decline to exercise supplemental jurisdiction over them in this action. See 28 U.S.C. § 1367(c). I will dismiss all state law claims without prejudice.

### C. Eighth Amendment Principles.

"Society does not expect," nor does the Eighth Amendment require, that inmates have "unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). Rather, only "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain" that violates constitutional protections. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Thus, the prisoner plaintiff must show that, objectively, he was suffering from a serious medical need and, subjectively, the prison staff was aware of the need for medical attention, but failed to respond reasonably to that need. *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

"A deliberate indifference claim consists of two components, objective and subjective." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). Objectively, the inmate's medical condition must be serious in the sense that it "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.*

> As the Supreme Court has made clear, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Rather, "to state a cognizable claim, a prisoner

must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* Not all medical delays, of course, will meet this standard. Medical care is often not immediate. Only the most fortunate are able to receive a doctor's appointment at the precise time they want it or medical attention at the very moment of arrival at a hospital. Waiting is often the name of the game. And actual treatment may not follow immediately upon medical attention, whether due to the caution of a prudent physician or the inevitable uncertainties of diagnosis. It would be wrong to turn the everyday inconveniences and frictions associated with seeking medical care into constitutional violations whenever they occur within the prison walls.

Mere delay is therefore not enough. Rather, "[t]he objective prong requires [the plaintiff] to show that the alleged delay . . . put him at a 'substantial risk' of 'serious harm.'" *Moss v. Harwood*, 19 F.4th 614, 624 (4th Cir. 2021) (quoting *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016)). A commonplace medical delay such as that experienced in everyday life will only rarely suffice to constitute an Eighth Amendment violation, absent the unusual circumstances where the delay itself places the prisoner at "substantial risk of serious harm," such as where the prisoner's condition deteriorates markedly or the ailment is of an urgent nature.

*Moskos v. Hardee*, 24 F.4th 289, 297–98 (4th Cir. 2022).

Subjectively, the prison official must have had "actual . . . knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's [own] action or inaction." *Jackson*, 775 F.3d at 178.

That is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference. To show an Eighth Amendment violation, it is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction.

*Id.* "[W]hen a medical professional of a jail facility knows of a serious medical need, the Eighth Amendment requires reasonable action." *Formica v. Aylor*, 739 F. App'x 745, 757 (4th Cir. 2018) (unpublished). Put another way, the defendant must have known the plaintiff was suffering from a condition which posed a risk to the prisoner such that it "would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Id.* at 755. "The necessary showing of deliberate indifference can be manifested by prison officials in responding to a prisoner's medical needs in various ways, including intentionally denying or delaying medical care, or intentionally interfering with prescribed medical care." *Id.* at 754. Furthermore, to be unconstitutional, a medical defendant's conduct must have been "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier ex rel. Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer v. Brennan*, 511 U.S. 825, 837 (1994). On the other hand, "[a]n inmate's mere disagreement with the course of treatment provided by medical officers will not support a valid Eighth Amendment claim." *Jackson v. Sampson*, 536 F. App'x 356, 357 (4th Cir. 2013) (unpublished).

### D. Jones' Eighth Amendment Claims.

Jones' Claim 1 essentially alleges that the defendants should have treated him sooner for salmonella exposure. The record includes no evidence, however, showing

when prison officials discovered that the symptoms inmates (including Jones) were exhibiting stemmed specifically from salmonella poisoning. Medical staff saw Jones three times within the first six days after he started experiencing symptoms. NP Frost saw Jones on August 23, 2021. Although Jones claims she offered no treatment, her notes attached as an exhibit to Jones' Amended Complaint indicate that she gave him Phenergan and Pedialyte, performed a COVID test, gave him a work pass, and advised him to seek further treatment as needed. Am. Comp. Ex. 2, at 2, ECF No. 63-2. NP Berry saw Jones on August 25, 2021, ordered blood work and a stool sample. Moreover, Jones offers no evidence that anything other than fluids and rest are the recommended treatment for most people exposed to salmonella. When Jones continued to complain of symptoms after more than two weeks, at an appointments in September 2021, medical staff also ordered medication for diarrhea and an antibiotic.

Jones faults NP Berry and NP Frost for their diagnostic and treatment decisions, and for not stepping outside their job descriptions to ensure that the ordered stool tests or medications they ordered were timely provided. He also disputes the accuracy of some notes these providers made about his reports of symptoms during exams and about physical examinations, which Jones claimed they did not perform.

In short, Jones disagrees with providers' decisions about what his medical needs were, what was reported or occurred during exams, and what treatment was necessary. Such disagreements between patient and provider about the course of medical treatment that is appropriate for the conditions observed cannot support a finding of deliberate indifference. *Jackson*, 536 F. App'x at 357. Therefore, I will summarily dismiss Claim 1 as to Berry and Frost, pursuant to § 1915A(b)(1).

The gravamen of Jones' Claim 1 as to defendants other than Berry and Frost is that everyone, from the lowest level medical staff member to the highest level VDOC administrators, should have helped him sooner in various, often unidentified ways. I cannot find that Officer Reed's denying walk-in access to the medical unit, the booth officer's delay waiting for another officer to deliver Jones' Emergency Grievance to medical, or administrator Durbin's merely making a phone call to BKCC with no immediate follow up call qualified as deliberate indifference. Jones simply does not state facts showing that these nonmedical personnel knew that their actions or inactions that allegedly delayed his receiving medical care thereby placed him at any significant risk of harm. Similarly, I cannot find that administrators, even if they allegedly overheard Jones' medical exam, could appropriately insist that he receive different treatment than the medical staff recommended or provided to treat his symptoms. Rather, such officials can rightfully rely on the determinations by the inmate's treating medical professionals as to the appropriate care the inmate needs.

-19-

*Miltier*, 896 F.2d at 851.  A prison administrator "cannot be liable for the medical staff's diagnostic decisions" and, indeed, "cannot substitute [his] judgment for a medical professional's prescription."  *Meloy v. Bachmeier*, 302 F.3d 845, 849 (8th Cir. 2002).

The symptoms Jones describes during this food poisoning episode would be miserable.  But I simply cannot find from Jones' allegations that any of the nontreating defendants knew those symptoms reflected an excessive risk of serious harm, or that they knew treatment different than the medical staff recommended or attempted was medically necessary.  Indeed, Jones has not alleged facts showing that failure to provide any particular treatment sooner after the salmonella exposure caused Jones the serious aftereffects that he now claims, such as FLD and kidney issues.  He supports this facet of his claim with nothing more than conclusory assertions and unwarranted logic leaps that need not be considered true in this analysis of motions to dismiss. *Langford*, 62 F.4th at 124.  Moreover, Jones certainly states no facts showing that any defendant knew delay of unspecified treatment for the effects of salmonella would result in FLD or any other long-term medical condition.  On Claim 1, I will grant the defendants' Motions to Dismiss as to all § 1983 claims.

Claim 2 alleges that various administrators knew inmates at BKCC complained frequently about the food served there and that contaminated,

uninspected food was fed to inmates in August 2021.[12]  From these factually unsupported assertions, Jones makes the logic leap that administrators also knew that the quality of the food at BKCC was so bad that inmates might suffer salmonella poisoning.  This claim is constructed merely with assertions for which Jones provides no factual support.  Such conclusory generalizations cannot be assumed true for purposes of a motion to dismiss analysis.  *Iqbal*, 556 U.S. at 678.  Since Jones offers no factual support for this food service claim, his Amended Complaint fails to state any plausible claim under § 1983.  *Id.*  I will grant the Motions to Dismiss as to the § 1983 claims asserted in Claim 2.

In Claim 3, Jones alleges that beginning in February 2022, various defendants failed to respond appropriately to his complaints of abdominal pain that he now characterizes as symptomatic of FLD.  He sues defendant A. Brown, a nurse, for allegedly not getting him scheduled sooner to see a provider.  In June 2022, an ultrasound result showed a diagnosis of FLD.  In August 2022, after Jones was diagnosed in June 2022 with FLD and continued to complain of left abdominal pain, defendant NP Sclafani ordered medications.  In October 2022, Nurse Jamerson

---

[12] Jones alleges that he and seventeen other inmates were exposed to salmonella in August 2021, with the source traced to a bell pepper and an unspecified "meat-byproduct." Am. Compl. 32, ECF No. 63.  He asserts that the defendants knew BKCC food service "[c]onstantly serv[ed] rotten produce," the bell pepper being one example; that the water used in the BKCC kitchen is contaminated; and that BKCC purchased food from at least three vendors "whom are known to fail FDA and Va. Health Dep't. Inspections 30% of the time." *Id.* at 32, 37.

denied an Emergency Grievance and told Jones to file a sick call request. In October and November 2022, Nurse Stanford responded to Jones' requests for medical care, saying that he was scheduled to be seen, or she would ask that he be seen. Jones alleges that he contacted administrators about these alleged treatment delays without receiving any assistance from them. On December 19, 2022, NP Sclafani diagnosed Jones with GERD and prescribed medication for that malady. Jones contends that this diagnosis was medically incorrect and that NP Sclafani failed to follow up on his condition. Sclafani also told Jones that VDOC offers no specific treatment for FLD.

These allegations state, at most, disagreements with medical treatment provided, complaints that medical staff should have expedited his requests for care, that providers misdiagnosed his condition, or that they failed to provide unspecified care for abdominal pain or FLD. Such allegations do not rise to the level of deliberate indifference as required to state an Eighth Amendment claim regarding medical care for inmates. *Jackson*, 536 F. App'x at 357. Even assuming providers should have prescribed different treatment for Jones' symptoms, noted some of his reported symptoms more accurately, or told him sooner about his FLD diagnosis, such issues present merely negligence and cannot support a constitutional claim as required to go forward under § 1983. *Estelle*, 429 U.S. at 106. As discussed, administrative officials may rely on the professional decisions of an inmate's

treating medical professionals and should not substitute their own judgment to require different care. *Meloy*, 302 F.3d at 849. I will grant the Motions to Dismiss as to the § 1983 claims asserted in Claim 3, and I will summarily dismiss Jones' claims against NP Frost, NP Berry, and NP Sclafani in Claim 3, pursuant to § 1915A(b)(1).

Nurse A. Brown, who allegedly failed to expedite or follow up on Jones' requests for treatment to be sure he had been scheduled to see a provider, is currently not represented by counsel and did not join in any motion to dismiss. However, for the same reasons that apply to the other defendants, Jones has not stated facts to support any plausible claim that A. Brown deprived him of his constitutional rights related to medical care. Therefore, I will summarily dismiss all claims against A. Brown, pursuant to § 1915A(b)(1).

In Claim 4 of the Amended Complaint, Jones asserts that VDOC policies are somehow deficient and caused him harm. Again, he mentions generally inmates' complaints about BKCC food service, without explaining how he knows of these complaints, the number of complaints filed, the date ranges involved, or the specific content of the complaints. Jones also asserts that many inmates have complained about the quality of medical care at BKCC, again with no evidence about the specific timing, nature, or number of complaints. In this claim, Jones sues numerous VDOC administrators without stating any details about their personal involvement in policy

making, in food service at BKCC, or in his personal medical care.  This entire claim teeters on conclusory assertions with no factual foundation.  Jones had notice of this factual deficiency in the defendants' previous Motions to Dismiss, and his Amended Complaint fails to correct it.  He cannot make his beliefs into facts merely by asserting them in an Amended Complaint.  I cannot find any factual basis on which to allow this claim to continue or even to warrant discovery.  I conclude that the defendants' Motions to Dismiss must be granted as to Claim 4.

III.  CONCLUSION.

For the reasons stated in this Opinion, it is hereby **ORDERED** as follows:

1.  The defendants' Motions to Dismiss, ECF Nos. 102, 104, and 154 are GRANTED as to all § 1983 claims, and all state law claims are DISMISSED without prejudice, pursuant to 28 U.S.C. § 1367(c).

2.  All § 1983 claims against defendants Frost, Berry, Sclafani, and A. Brown are summarily DISMISSED without prejudice, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim upon which relief could be granted.

A separate Judgment will issue herewith.

ENTER:  March 31, 2025

/s/  JAMES P. JONES
Senior United States District Judge